IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SANDRA A. WALL,                          )
                                         )
                    Plaintiff,           )
                                         )
          v.                             )      Civil Action No. 04-531
                                         )
JO ANNE B. BARNHART,                     )
COMMISSIONER OF SOCIAL SECURITY,         )
                                         )
                    Defendant.           )


MEMORANDUM ORDER

CONTI, District Judge

### Introduction

This is an appeal from the final decision of the Commissioner of Social Security

("Commissioner" or "defendant") denying the claim of Sandra A. Wall ("plaintiff") for Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 423,

et seq.  Plaintiff contends that the decision of the administrative law judge (the "ALJ") that she is

not disabled and, therefore, not entitled to benefits, should be reversed because the decision is not

supported by substantial evidence and that DIB benefits should be granted or, in the alternative,

the case should be remanded.  Defendant asserts that the decision of the ALJ is supported by

substantial evidence.  The parties filed cross-motions for summary judgment pursuant to Rule

56(c) of the Federal Rules of Civil Procedure.  The court will deny the cross-motions for

summary judgment and grant plaintiff's alternative request for relief for remand of the case to the

Commissioner.  The remand is warranted because the ALJ erred in not affording appropriate

weight to the medical opinion of an examining physician and not fully developing the record

with respect to plaintiff's medication and its side effects which may affect whether all of

plaintiff's limitations were included in the hypothetical posed to the vocational expert ("VE").


### Procedural History

Plaintiff filed the application at issue in this appeal on September 26, 2002 (R. at 54-56)

asserting a disability since March 20, 2002 by reason of "Severe Depression, Social Anxiety

Disorder, Anxiety/Panic Attacks, Suicidal 'Thoughts,' Bipolar Disorder." (R. at 66.) She was

denied benefits on December 12, 2002, at the initial level (R. at 27-30) and on January 27, 2003,

filed a request for a hearing. (R. at 31.) On July 15, 2003, a hearing was held before the ALJ.

Plaintiff appeared at the hearing and testified. (R. at 289-315.) Plaintiff was represented by an

attorney at the hearing. (R. at 291.) A vocational expert ("VE") also testified. (R. at 308-11.)

In a decision dated December 23, 2003, the ALJ determined that plaintiff was not disabled and,

therefore, not entitled to benefits. (R. at 11-20.) Plaintiff timely requested a review of that

determination (R. at 6-7) and by letter dated February 21, 2004 the Appeals Council denied the

request for review. (R. at 3-5.) Plaintiff subsequently commenced the present action seeking

judicial review.


### Legal Standard

The Congress of the United States provides for judicial review of the Commissioner's

denial of a claimant's benefits. 42 U.S.C. § 405(g). This court must determine whether or not

there is substantial evidence which supports the findings of the Commissioner. 42 U.S.C. §

405(g). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as

a reasonable mind might accept as adequate.'" <u>Ventura v. Shalala</u>, 55 F. 3d 900, 901 (3d Cir. 1995)(quoting <u>Richardson v. Perales</u>, 402 U.S. 389 (1971)).  This deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla."  <u>Burns v. Burnhart</u>, 312 F. 3d 113, 118 (3d Cir. 2003).  This standard, however, does not permit the court to substitute its own conclusions for that of the fact-finder.  <u>Id.</u>; <u>Fargnoli v. Massonari</u>, 247 F.3d 34, 38 (3d Cir. 2001)(reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless of whether the court would have differently decided the factual inquiry).

### *Background*

Plaintiff was 46 years old at the time of the hearing before the ALJ.  (R. at 293.)  She lives in a house with her two sons.  (R. at 295.)  At the time of the hearing her sons were 14 and 18 years old.  (<u>Id.</u>).  Plaintiff is married, but has been legally separated from her husband for over 10 years.  (R. at 57.)  She has a high school education and has past relevant work as a price analyst, an order planner and an inside sales representative.  (R. at 293-94.)  Plaintiff worked in the steel industry since at least 1983 through 2002, approximately 20 years.  (R. at 80.)  She worked for at least 9 years prior to 1983 (R. at 58.) and thus has cumulative work experiences of more than 25 years.

Plaintiff was treated in 2000 for depression and was hospitalized for the first time in March 2002, due to suicidal and homicidal ideation.  (R. at 279.)  At that time plaintiff had thoughts of harming her boss.  (<u>Id.</u>)  She was hospitalized for the second time approximately one year later in March 2003.  (<u>Id.</u>)  She initially was suicidal and was kept in the hospital for several

days because her safety at home could not be guaranteed.  (R. at 217.)  She had outpatient

treatment for approximately one month following her discharge in 2003.  (<u>Id.</u>)

     In April 2002 her diagnosis by her psychiatrist, Omar I. Bhutta, M.D., was major

depression, single episode, and bipolar affective disorder, depressed, was ruled out.  (R. at 165a.)

In September 2002, the diagnosis was changed by Dr. Bhutta to bipolar affective disorder.  (R. at

172.)  Her medications in 2002 included Paxil, Wellbutrin, Klonopin,[1] and Trazadone.  (R. at

175, 182.)  Her medication for Klonopin was .5 mg b.o. bid[2] prn.[3]

     In 2003, at the time of her discharge she was diagnosed as bipolar 2 depressed.  (R. at

218.)  After her second hospitalization, plaintiff's psychiatrist was Tina Reiter, D.O.  (R. at 257.)

Dr. Reiter diagnosed plaintiff with bipolar disorder and her medications were Lexapro 30 mg. qd,

Seroquel[4] 25 mg qhs[5], and Depakote 500 mg bid. (R. at 257, 262.)  On May 27, 2003, Dr. Reiter

increased plaintiff's Seroquel from 25 mg to 50 mg qhs, and referred her to therapy with Dr.

Niebauer.  (R. at 257.)

--------

[1]Klonopin contains clonazepam.  <u>Physicians' Desk Reference</u> 2895 (59th ed. 2005).
Somnolence was the most commonly noted treatment-emergent adverse event incidence in 6- to
9-week trials. <u>Id.</u> at 2897.  The incidence percentage for 1 mg was 26 percent.  <u>Id.</u>

[2]The abbreviation "b.i.d." means twice a day.  <u>Taber's Cyclopedic Medical Dictionary</u>,
App. 6 at 2369 (19th ed. 2001).

[3]The abbreviation "p.r.n." means as needed.  <u>Taber's Cyclopedic Medical Dictionary</u>,
App. 6 at 2373 (19th ed. 2001).

[4]Seroquel is a psychotropic agent.  <u>Physicians' Desk Reference</u> 662 (59th ed. 2005).  The
most common treatment-emergent adverse experience incidence in a 3-week trial for the
treatment of acute bipolar mania (adjunct therapy) was somnolence at 34%.  <u>Id.</u> at 665.

[5]The abbreviation "qhs" means every bedtime.  <u>Taber's Cyclopedic Medical Dictionary</u>,
App. 6 at 2371, 2373 (19th ed. 2001).

Plaintiff's GAF[6] scores varied between 30 to 60.  For example, on March 22, 2002 she had a GAF of 40 (R. at 271); on March 23, 2002 she had a GAF of 60 (R. at 121); on April 15, 2002 she had a GAF of 50 (R. at 181); on March 11, 2003 she had a GAF of 30 (R. at 214, 226); on March 17, 2003 she had a GAF of 55 (R. at 216); and on April 29, 2003 she had a GAF of 60 (R. at 121).  Plaintiff's daily activities consists of watching television, reading, starting projects such as washing dishes, sweeping and laundry, although she testified that her children have taken on a lot of those responsibilities.  (R. at 303-04.)  She attends her sons' baseball games, will go grocery shopping on a selective basis and does not participate in social activities.  (R. at 304.)

In her application for benefits dated October 23, 2002, plaintiff reported having side effects related to her medications.  She replied to the question: "If you are taking medication, does it have any effect on your fatigue?"  Her answer was: "Unsure.  Had bouts of extreme fatigue before medication & and still have it @ times."  (R. at 96.)  On her request for a hearing before an administrative law judge dated January 16, 2003, plaintiff reported, among other things: "[e]xtreme drowsiness from the Clonazepam [Klonopin]."  (R. at 31.)  In responding to the question: "Do you need to take to rests between activities?" she answered, "Yes" and stated:

---

[6]The GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4th ed. 2000); see Lozada v. Barnhart, 331 F.Supp.2d 325, 330 n.2 (E.D. Pa. 2004).  An individual with a GAF score of 60 may have "[m]oderate symptoms" or "moderate difficulty in social, occupational, or school functioning;" of 50 may have "[s]erious symptoms (e.g., suicidal ideation . . . .)" or "impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job);" of 40 may have "[s]ome impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood; of 30 may have behavior "considerably influenced by delusions or hallucinations" or "serious impairment in communication or judgment (e.g., . . . suicidal preoccupation)" or "inability to function in almost all areas . . . ."  (Id.)

"Always need a 1 hr. to 2 hr. relaxation period between daily tasks or responsibilities.  3-5 times day."  (R. at 91.)

Plaintiff's medical records reflect that Dr. Gray on March 23, 2002, completed an interim discharge summary form which noted that plaintiff was admitted to the hospital on March 20, 2002 and on discharge had, among other things, a diagnosis of major depression – recurrent and a GAF of 60.  (R. at 120-21.)  On April 15, 2002, Dr. Bhutta prepared a psychiatric evaluation of plaintiff.  (R. at 165-65a.)  He noted that she was admitted to the hospital from March 20, 2002 to March 25, 2002, at which time she was severely depressed and had suicidal ideation.  (R. at 165.)  In the hospital she was started on Wellbutrin 150 mg daily, Klonopin .5 mg b.i.d. prn and Trazadone 50 mg. hs.  (Id.)  He noted that her depression had improved by "50 percent," but her anxiety had increased.  (Id.)  He reported that she was alert and oriented times three.  She had no suicidal or homicidal ideation and her judgment and insight were intact.  He assigned her a GAF of 50.  (R. at 165A.)  On September 12, 2002, Dr. Bhutta changed plaintiff's diagnosis from major depressive disorder to bipolar affective disorder.  (R. at 172.)  Dr. Bhutta on January 7, 2003 hand wrote on a script form: "To whom it may concern Ms. Wall is being seen for Bipolar affective disorder – mixed type.  In my opinion she is permanently disabled."  (R. at 110.)

Dr. Manella Link, Ph.D., who did not examine plaintiff, on December 8, 2002, completed a psychiatric review technique form for plaintiff.  (R. at 192-05.)  Dr. Link assessed that plaintiff's medical dispositions while severe were not expected to last 12 months and based the medical disposition on affective disorders and anxiety-related disorders.  (R. at 192.)  Dr. Link assessed the limitations for restriction of activities of daily living and difficulties in maintaining social functioning as mild with a moderate limitation for difficulties in maintaining concentration

persistence or pace and noted that there were one or two repeated episodes of decompensation of extended duration.  (R. at 202.)  Dr. Link noted that plaintiff's medications included Klonopin. (R. at 204.)  Dr. Link also completed a mental residual functional capacity assessment of plaintiff and found that she was not significantly limited in many categories, including ability to understand and remember very short and simple instructions and was moderately limited in other activities, such as the ability to carry out detailed instructions.  (R. at 206-07.)  Dr. Link did not find that plaintiff was markedly limited in any category.  (Id.)

In March 2003, approximately three months after Dr. Link completed the review, plaintiff was again suicidal and she was admitted to the hospital and evaluated with a GAF of 30.  It was noted that: "The patient is alert, pleasant, and cooperative.  Speech is normal.  Mood was depressed and her affect was blunted.  She was nonpsychotic.  She did admit to suicidal ideation with thoughts of overdose and was cognitively intact."  (R. at 214.)  The plan noted was to continue, among other medications, Klonopin.  (Id.)  In the discharge summary, on March 17, 2003, her treatment course was summarized as follows:

> The patient was admitted, kept on status 2 for her safety, initially the patient was suicidal and then for a couple of days later she was safe in the hospital, but was not able to guarantee her safety at her home.  Her Lithium, Paxil, Wellbutrin were discontinued and she was put on Depakote 500 mg b.i.d.  Her levels were checked on February 15, 2003 which showed valproic acid was 73.  The patient's symptoms gradually improved.  Prior to discharge mental status examination showed her to be alert, awake, oriented times three.  She was cooperative, had good eye contact, denied SI/HI or AV hallucinations.  Mood was better.  Affect blunt.  Speech was normal.  Judgment was safe.

(R. at 217-18.)  It was also noted that her GAF was 55.  (R. at 218.)

In 2003, plaintiff began seeing Dr. Tina Reiter.  On the last treatment notes dated May 27, 2003 reflected in the record from Dr. Reiter, Dr. Reiter noted that plaintiff's depression was better, she did not have suicidal ideation, she "sleeps well when she takes the Seroquel" and she was "frequently anxious but mood has evened out, not as up & down, feels more stable."  (R. at 257.)  At that time Dr. Reiter increased her Seroquel from 25 mg. to 50 mg. qhs. and referred plaintiff to therapy.  (Id.)

After the hearing before the ALJ on July 15, 2003, the ALJ requested a consultative psychiatric examination.  (R. at 311.)  On August 24, 2003 the examination was performed by Christine A. Martone, M.D.  (R. at 279, 288.)  Dr. Martone noted plaintiff's history of depression and that she was currently being treated with Depakote 500 mg b.i.d., Lexapro 30 mg. qd and Seroquel 50 mg q.h.s.  (R. at 280, 282.)  Dr. Martone commented that plaintiff "has been treated variously with Paxil, Wellbutrin, Prozac, Lexapro, lithium, Depakote and Seroquel."  (R. at 279.)  Noting that plaintiff was appropriately dressed and had well manicured nails, Dr. Martone wrote: "During the entire interview, [plaintiff] shook her legs, tapped her feet and clutched her purse to her chest."  (R. at 282.)  She noted that plaintiff's "affective expression was dysphoric[7] and anxious."  (Id.)  She also noted that plaintiff "was reliable.  She did not attempt to exaggerate or minimize her symptomatology."  (R. at 284.)  Diagnosis included, among other things, bipolar disorder and panic disorder with agoraphobia.  (Id.)  Prognosis was noted as being difficult to determine, commenting that plaintiff's "remission is not impressive" and had a guarded prognosis.  (Id.)  Dr. Martone reported regarding concentration, persistence and pace that plaintiff

---

[7]"Dysphoria" means "[a] long lasting mood disorder marked by depression and unrest without apparent cause; a mood of general dissatisfaction, restlessness, anxiety, discomfort, and unhappiness."  Taber's Cyclopedic Medical Dictionary 627 (19th ed. 2001).

maintains a sleep routine, and that she is easily distracted.  (R. at 285.)  Dr. Martone stated:
"This woman would have difficulty completing work-related tasks in her current condition
because of her extreme anxiety."  (Id.)

Dr. Martone found plaintiff to have marked limitations in ability to make judgments on
simple work-related decisions, to interact appropriately with the public, to interact appropriately
with supervisors, and to interact appropriately with co-workers.  (R. at 287.)  Dr. Martone found
plaintiff had extreme limitations in responding appropriately to work pressures in a usual work
setting and to respond appropriately to changes in a routine work setting.  (Id.)  Dr. Martone
noted that plaintiff's capabilities that were affected by her impairment included plaintiff's being
"so anxious that she constantly tapped her feet & clutched her purse."  (R. at 288.)

### *Discussion*

Under Title XVI of the SSA, a disability is defined as the inability "to engage in any
substantial gainful activity by reason of any medically determinable physical or mental
impairment which can be expected to result in death or which has lasted or can be expected to
last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c (a)(3)(A).
Similarly, a person is unable to engage in substantial gainful activity when "his physical or
mental impairment or impairments are of such severity that he is not only unable to do his
previous work but cannot, considering his age, education, and work experience, engage in any
other kind of substantial gainful work which exists in the national economy" 42 U.S.C. § 1382c
(a)(3)(B).

9

In order to make a disability determination under the SSA, a five-step sequential evaluation must be applied.  20 C.F.R. § 416.920.  The evaluation consists of the following stages: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the claimant's severe impairment meets or equals the criteria of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if not, whether the claimant's impairment prevents him from performing his past relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy in light of his age, education, work experience and residual functional capacity.  20 C.F.R. §§ 404.1520, 416.920; Sykes v. Apfel, 228 F.3d 259, 262-63 (3d. Cir. 2000).  If the plaintiff fails to meet the burden of proving the requirements in the first four steps, the administrative law judge may find that the plaintiff is not disabled.  Burns v. Burnhart, 312 F.3d at 119.  The Commissioner is charged with the burden of proof with respect to the fifth step in the evaluation process.  Id.

In the instant case, the ALJ found: (1) plaintiff has not engaged in substantial gainful activity since the alleged onset of disability on March 20, 2002; (2) plaintiff suffers from bipolar disorder, depressive disorder and a panic disorder with agoraphobia, which are severe; (3) these impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) plaintiff cannot return to any past relevant work; and (5) there are jobs in the national economy that plaintiff could perform.  (R. at 19-20.)

The ALJ in the decision dated December 23, 2003, reviewed the medical evidence of record, including the records from the consultative exam performed by Dr. Martone.  With respect to plaintiff's medication the ALJ noted:  "the claimant's condition appears to be

10

adequately controlled with psychotropic medication, psychiatric management and regular individual psychotherapy." (R. at 15.) The ALJ also commented: "[I]n May 2003 the claimant reported that her depression was better, that she was not overwhelmed, that she was sleeping well with the use of Seroquel, and that she felt more stable. . . ." (R. at 17.) The ALJ gave some weight to the opinion of Dr. Link, the state agency medical consultant, who found only moderate limitations "in areas of concentration, persistence or pace, social functioning and adaptation." (Id.) The ALJ gave little weight to some of the opinions of Dr. Bhutta and Dr. Martone, finding those opinions to be inconsistent. Specifically, the ALJ noted that Dr. Bhutta's opinion was inconsistent with his own objective findings and that Dr. Martone's opinion contradicted her own objective findings. (Id.) The ALJ also considered Dr. Reiter's GAF rating of 60 for plaintiff indicating moderate symptoms. (Id.)

In determining that plaintiff was not disabled, the ALJ considered plaintiff's daily activities which included driving, managing finances, "cleaning, and doing laundry with assistance from her sons." (Id.) The ALJ posed the following hypothetical to the VE:

> If you would consider a hypothetical individual of the Claimant's age, education, and work experience, where there's no exertional limitations, but the ability to concentrate would be reduced such that the individual is capable of performing no more than simple, repetitive, routine, and low-stress tasks, so simple, repetitive, routine and low-stress tasks. Also, interaction with others would be limited to no interaction with the public. And that would include telephone contact, so no interaction with the public, including telephone contact. No more than occasional interaction, and by occasional I mean less than one third of the time cumulatively during an eight-hour work period, and no more than occasional with co-workers so no public, no more than occasional co-worker interaction.

(R. at 308-09.) The VE advised that given those limitations there would be positions that the hypothetical person could perform. (R. at 309.) The ALJ relied on that response in finding that

the Commissioner met the burden in step five because there were jobs in the national economy

that plaintiff could perform.  When the ALJ asked the VE if a person could not complete a full

workday or work week or required extra rest periods or extra absences, whether those

circumstances would affect the person's ability to obtain work.  The VE's response was that

those limitations would exclude or prevent the hypothetical person from working in any of the

occupations suggested by the VE.  (R. at 310.)  The VE also noted: "If an individual would be off

of unskilled work five to ten minutes hourly, that likely would compromise full-time,

competitive employment on a regular consistent basis because it would become noticeable to the

supervisor."  (R. at 311.)

Plaintiff argues that the ALJ erred in the fifth step of the evaluation by not assigning

appropriate weight to treating and consulting psychiatric medical opinion evidence and in basing

the finding that plaintiff was not disabled on a defective hypothetical.  Defendant disputes that

the ALJ erred and asserts that the ALJ's decision should be affirmed because it is supported by

substantial evidence of record.  Because the court finds merit in plaintiff's arguments that the

ALJ erred in the weight assigned to Dr. Martone's opinion and failed to include all of plaintiff's

impairments – specifically the side effects of her medication – in the hypothetical proposed to the

VE or, in the alternative, did not develop the record sufficiently to determine the limitations from

the side effects of plaintiff's medications, the case must be remanded.

### a. Weight given to examining physician's opinion

A determination relating to disability by an administrative law judge can be particularly

difficult when dealing with mental impairments.  In Morales v. Apfel, 225 F.3d 310 (3d Cir.

2000), the court considered a district court's affirmance of a denial of benefits by the

Commissioner.  In that case, the claimant was found not to be disabled by an administrative law judge because he could perform his past relevant work, i.e., the plaintiff failed to meet the burden of proof with respect to step four of the sequential evaluation.  The plaintiff in <u>Morales</u> had mental health problems and was diagnosed with a dependent personality disorder.  The plaintiff was described as having a prognosis of fair.  After being examined by a number of medical professionals, the claimant was diagnosed with adjustment disorder with an impaired ability to concentrate, perform activities, etc.  One doctor suspected that the plaintiff was malingering. The record, however, reflected that the plaintiff was being treated with "various psychotropic drugs."  <u>Id.</u> a 315.

In <u>Morales</u>, the administrative law judge rejected a medical opinion of a treating physician who had concluded that the claimant had serious limitations with respect to several abilities including to follow work rules, relate to co-workers, function independently, etc.  The physician found that the claimant had poor to none ability to deal with work stresses in an emotionally stable manner.  The treating physician, however, also had treatment notes that reflected claimant "was stable and well controlled with medication."  <u>Id.</u> at 317.

The United States Court of Appeals for the Third Circuit found that it was improper for the administrative law judge to reject the treating physician's opinion based on the notation that the claimant was stable with medication.  The court stated:

> The relevant inquiry with regard to a disability determination is whether
> the claimant's condition prevents him from engaging in substantial gainful
> activity. . . .  For a person, such as [claimant], who suffers from an
> affective or personality disorder marked by anxiety, the work environment
> is completely different from home or a mental health clinic. [The treating
> physician's] observations that [claimant] is 'stable and well controlled
> with medication' during treatment does not support the medical conclusion

13

> that [claimant] can return to work. [The physician], despite his notation, opined that [claimant's] mental impairment rendered him markedly limited in a number of relevant work-related activities. Other information in the treatment record supports this opinion. Thus, [the physician's] opinion that [claimant's] ability to function is seriously impaired or non-existent in every area related to work shall not be supplanted by an inference gleaned from treatment records reporting on the claimant <u>in an environment absent of the stresses that accompany the work setting</u>.

<u>Id.</u> at 319 (emphasis added.). The court also noted: "that an ALJ's personal observations of the claimant 'carry little weight in cases . . . involving medically substantiated psychiatric disability.'" <u>Id.</u> (quoting <u>Daring v. Heckler</u>, 727 F.2d 64, 70 (3d Cir. 1984)). The court of appeals concluded that because the administrative law judge failed to give proper consideration to the opinions of certain physicians, the testimony of the vocational expert was not enough to meet the substantiality test. In <u>Morales</u> the court reversed the judgment and remanded the case with directions to award the claimant benefits. Here, the court cannot determine if the ALJ's determination with respect to disability would have been different if the guidance provided in <u>Morales</u> would have been considered by the ALJ in assigning the weight to be given to the various medical opinions. It is especially troubling that the ALJ gave some weight to the opinion of a non-examining state agency consultant, when that opinion was formed <u>prior</u> to plaintiff's second hospitalization and <u>prior</u> to Dr. Martone's examination and opinion which noted plaintiff's <u>extreme</u> anxiety and difficulty in completing work-related tasks much like the medical opinions in <u>Morales</u>. A remand is warranted for the ALJ to re-evaluate the weight to be given to the medical opinions.

14

**b.  Limitations relevant to side effects of medications**

An administrative law judge's duty to develop fully the record "exists even when the claimant is represented by counsel. . . ."  Schwartz v. Halter, 134 F.Supp.2d 640, 656 (E.D. Pa. 2001).  In this case, plaintiff's medications prior to her hospitalization in 2003 included Klonopin, and after her discharge Seroquel.  In the record, plaintiff indicated her fatigue and extreme drowsiness.  The ALJ did not explore those symptoms or include those limitations in the hypothetical to the VE.  An administrative law judge must "make every reasonable effort to obtain available information" including "the . . . side effects of any medication the individual takes . . . ."  SSR 96-7p 1996 WL 374186 *3 (SSA).  Klonopin, which contains clonazepam, is used, among other things, for the treatment of panic disorder.  Physicians' Desk Reference 2895 (59th ed. 2005).  Adverse reactions to Klonopin for the treatment of panic disorder commonly observed in 6- to 9-week clinical trials showed the most common incident to be somnolence, reflecting approximately a 26-37% incidence.  Id. at 2897.  Somnolence is defined as "prolonged drowsiness or sleepiness."  Taber's Cyclopedic Medical Dictionary 1922 (19th ed. 2001). Plaintiff was on Klonopin/clonazepam for approximately two years.  After March 2003 plaintiff no longer took Klonopin but her medications included Seroquel.  "Seroquel is indicated for the short-term treatment of acute manic episodes associated with bipolar I disorder. . . ."  Physicians' Desk Reference 663 (59th ed. 2005).  The adverse side effects for Seroquel, a psychotropic drug, reported in 3- to 12-week clinical trials included an 18% incidence for somnolence and in a 3-week trial, a 34% incidence for somnolence.  Id. at 662, 665.

The adverse side effects of prolonged drowsiness or sleepiness associated with plaintiff's medications was not considered by the ALJ in the hypothetical posed to the VE.  When an

administrative law judge poses a hypothetical to a vocational expert, the hypothetical must include all of the plaintiff's impairments that are supported by the record.  Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).  If the hypothetical does not include all of the plaintiff's impairments, then the hypothetical is deficient and the vocational expert's response cannot be considered substantial evidence.  Further, a deficient hypothetical necessitates that the court remand the case to the Commissioner for further proceedings.  Burns v. Barnhard, 312 F.3d 118-19 (3d Cir. 2003).  Since the adverse side effects of plaintiff's medications Klonopin and Seroquel were not included in the hypothetical, the hypothetical was flawed and the case must be remanded.  In the alternative, the ALJ did not fully develop the record relating to plaintiff's medications and the side effects of the medications.  Plaintiff's complaints of needing to rest during the day and extreme fatigue may be consistent with the side effects of Klonopin and Seroquel, which include somnolence.  The failure of the ALJ to develop a record about whether plaintiff's complaints were due to her medications also is a basis for remand.   The ALJ should have credited the record of those side effects or should have, at a minimum, more fully developed the record with respect to the medications and their side effects.

On remand the ALJ should either explain why plaintiff's statements regarding the side effects of the medications were not credited or should develop the record to explore whether there are any limitations that must be included in the hypothetical relating to the side effects of plaintiff's medications.  The ALJ should determine whether plaintiff's use of Seroquel or similar medications is continuing and whether the side effects of that medication or other medications affect plaintiff's ability to perform jobs in the national economy.

### *Conclusion*

Based upon the evidence of record, the parties' arguments and supporting documents filed in support and opposition thereto, this court concludes that there is not substantial evidence in the record to support the ALJ's findings.  The decision of the ALJ denying plaintiff's application for DIB is remanded for further proceedings consistent with this opinion.

Plaintiff's motion for summary judgment (Docket No. 6) is **DENIED**, and  defendant's motion for summary judgment (Docket No. 9) is **DENIED**.

**IT IS ORDERED AND ADJUDGED** that this case shall be remanded to the Commissioner for further proceedings consistent with this opinion.

The clerk shall mark this case as closed.

By the court:


<u>/s/ Joy Flowers Conti</u>
Joy Flowers Conti
United States District Judge

Dated: October 18, 2005

cc: counsel of record

17